David E. Kahn and Lucille P. Kahn v. Commissioner.
Kahn v. Commissioner
Docket No. 35725.
United States Tax Court
1953 Tax Ct. Memo LEXIS 306; 12 T.C.M. (CCH) 378; T.C.M. (RIA) 53115; April 8, 1953
*306 Benjamin Mahler, Esq., for the petitioners. John James O'Toole, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The petitioners, residents of New York, New York, filed a joint income tax return for the year 1942 with the collector of internal revenue for the fourteenth district of New York. On the return there was claimed a deduction for a worthless debt in the amount of $46,289.06. The Commissioner refused to allow the deduction. By reason of the forgiveness feature of the Current Tax Payment Act of 1943, the Commissioner did not determine a deficiency for 1942, but his disallowance of that deduction, together with another adjustment not now in controversy, resulted in a determination of a deficiency in income and victory tax in the amount of $33,096.08 for 1943. It is that deficiency which is here in controversy. A stipulation of some of the facts has been filed by the parties, and the facts thus stipulated are found and incorporated herein by reference. Petitioner David E. Kahn made a loan to one Isaac Lande in February 1930 in an amount of not less than $40,330. In 1932, the loan agreement was reduced to writing. It provided, *307 inter alia, as follows: "WITNESSETH: "Heretofore and on or about the 1st day of February, 1930, Kahn loaned to Lande securities of the then market value of $40,330. Said securities are referred to in a letter dated February 1, 1930, signed by Lande and addressed to Kahn. Lande agreed to return said securities to Kahn on May 1, 1930, but has not done so. Lande has paid over to Kahn on account of dividends received from said securities the sum of $1,914.25. Lande recognizes his obligation to Kahn in the said sum of $40,330 with interest at six per cent. (6%) from February 1, 1930, which interest to February 1, 1932 amounts to $4,839.60, against which interest Lande is entitled to credit for said sum of $1,914.25 leaving a balance owing on February 1, 1932 by Lande to Kahn in the amount of $40,330. on account of principal and $2,925.35 on account of interest (after crediting the aforesaid dividends). "In consideration of the premises and of the sum of One Dollar ($1.00) by each of the parties to the other in hand, paid, receipt of which is acknowledged, it is AGREED as follows: "1. - Lande's obligations under the aforesaid letter dated February 1, 1930 are cancelled and Lande *308 is released therefrom. "2. - Lande agrees to pay to Kahn on or before the 1st day of April, 1932 the sum of $2,925.35, being balance of interest due as of February 1, 1932. "3. - Lande agrees to pay Kahn the principal amount of his indebtedness, to wit, $40,330. in instalments of $5,000. quarterly commencing May 1, 1933 and the balance of said principal amount in full on January 31, 1935. Lande is given the right to anticipate payment of said principal amount in whole or in part at any time previous to January 31, 1935. "4. - Lande agrees to pay Kahn interest at the rate of six per cent. (6%n per annum on said principal amount of $40,330. and unpaid balance quarterly commencing May 1, 1932. "5. - If Lande shall default in making any payment on account of principal or interest, the entire balance of Lande's indebtedness remaining unpaid shall become immediately due and payable with interest. "6. - Lande agrees to assign to Kahn (if he shall not already have done so) policy No. 964,756, issued by Massachusetts Mutual Life Insurance Co., the effective date of which is June 4, 1930, insuring Lande's life in the amount of $50,000. Kahn acknowledges that said assignment is collateral *309 security for Lande's obligations under this agreement. Upon payment in full of the amounts required to be paid by Lande under this agreement, Kahn agrees to reassign to Lande said insurance policy and Kahn further agrees in the event of Lande's death that any sum received under said insurance policy in excess of the sums due by Lande to Kahn under this agreement shall be paid by Kahn to Lande's representatives.
"7. - Lande agrees to pay promptly the premiums on said insurance policy No. 964,756 and further agrees that if any of said premiums are not paid when due and remain unpaid after expiration of the grace period allowed by said policy, the entire balance of Lande's indebtedness then remaining unpaid shall immediately become due and payable with interest." The terms of the agreement were never complied with; the $5,000 payments specified were never made. The record before us fails to disclose whether the life insurance policy mentioned was ever in fact put up as collateral or whether, if it was, premiums were paid thereon as required; nor does it show that interest was ever paid on the loan. Lande and Kahn were friends. Lande was a practicing lawyer and did considerable legal *310 work for Kahn. Kahn testified that he made additional cash loans to Lande, from time to time, bringing the aggregate indebtedness up to about $51,000; that Lande had repaid about $2,500; that the value of Lande's legal services was about $2,000; and that the net difference represented the amount of $46,289.06, which was claimed as a bad debt on the 1942 return. The testimony as to the additional cash loans was far too vague and unsatisfactory to be accepted by us at face value. Nor are we satisfied that the value of Lande's legal services, extending over a period of years, was only $2,000. However, it is not necessary to make any findings in respect of the asserted additional loans, partial repayments, or the value of Lande's legal services, because of our conclusion that the debt from Lande to Kahn, whatever its net amount, became worthless prior to 1942, and could not be allowed as a deduction for that year. Lande died suddenly on November 7, 1941, at the age of 57. Although he appears to have had a moderately successful legal practice, he was hopelessly involved financially. His debts about 1940 or 1941 were in the aggregate about $250,000, and he had no assets of any consequence. *311 His debts were of long standing. In 1937 one of his creditors made an unsuccessful attempt to place him in involuntary bankruptcy. Lande owed that creditor $80,000, and in 1940 or 1941, settled the entire debt by paying $1,600 to $2,000. That creditor was unfriendly and it is highly unlikely that he would have accepted payment of such a comparatively small amount if there were favorable prospects of getting more. Another debt in the amount of about $40,000, which Lande contested, was also settled about that time for $2,000 or $2,500. At his death his debts amounted to about $150,000. There was never any administration of Lande's estate, and there is no satisfactory showing on this record that he left behind sufficient assets to pay for burial and other expenses at his death. His account with the law firm with which he was associated was overdrawn by about $2,000, and that portion of the fees allocable to Lande received by the firm after Lande's death did not exceed the amount by which his account was overdrawn. In an effort to show that Kahn had reasonable expectation of repayment in 1941, even after Lande's death, great stress is placed upon the fact that Lande had a 5-1/2 per *312 cent common stock interest in a corporation known as de Noronha Rubber Products Corporation. That corporation had outstanding preferred stock in an undisclosed amount. It was engaged in the business of making rubbers, utilizing certain patents and "molds" furnished by a Brazilian inventor named de Noronha. The corporation was losing money, and an effort was made to induce one Lothar Adler to take over a controlling interest in the enterprise, with the expectation that it might be put on a paying basis. The venture was highly speculative. Although Adler showed interest, the subsequent attack on Pearl Harbor on December 7, 1941, together with the anticipated restrictions on the supply of raw rubber, caused Adler to abandon the project no later than December 10, 1941. Steps were taken early in 1942 to liquidate the de Noronha company, and it was in fact dissolved on December 31, 1942. The record before us fails to show that any amount whatever was paid out by the corporation in respect to Lande's stock upon liquidation. Another factor urged as ground for belief that the Lande debt was not worthless before 1942 was the fact that Lande was named as executor in the wills of a Mr. Loeb *313 and his wife - the theory being presumably that when the Loebs died Lande would earn fees as executor out of which he could pay his debts. However, there was no assurance whatever that the Loebs might not name someone else as executor in place of Lande prior to their death, and even if this macabre expectation of executor's fees with respect to the estates of persons then alive were otherwise relevant, the fact is that Lande predeceased both Loebs. At Lande's death, no expectation of funds whatever from this source could possibly exist. Various other matters and speculative ventures in which Lande was said to have an interest were also suggested as possible sources of funds for repayment of his debt to Kahn. We have carefully examined the evidence in this regard and cannot find that such matters or ventures could have been taken into account after Lande's death as furnishing any reasonable hope that his debt to Kahn would thereafter be paid. Upon Lande's death on November 7, 1941, the debt to Kahn became worthless. Kahn could have no reasonable expectation thereafter that it would be paid. Certainly, there is a failure of proof that it became worthless after December 31, 1941. We *314 have considered all of the evidence and hold and find as a fact that the debt did not become worthless in 1942, as claimed by Kahn. Decision will be entered under Rule 50.